#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| XAVIER CASTRO, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 3:15-cv-00556-MJR |
| | ) | |
| ILLINOIS DEPARTMENT | ) | |
| OF CORRECTIONS, | ) | |
| MARK HODGES, | ) | |
| STEPHEN DUNCAN, | ) | |
| C/O TANNER, | ) | |
| C/O STROUD, | ) | |
| NURSE BROOKS, | ) | |
| DR. JOHN COE, and | ) | |
| DR. BUTALID, | ) | |
| | ) | |
| **Defendants.** | ) | |

#### MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Xavier Castro is currently incarcerated at the Lawrence Correctional Center in Sumner, Illinois. (Doc. 17 at 1.) Proceeding *pro se*, Castro has filed a civil rights action pursuant to 42 U.S.C. § 1983 against the Illinois Department of Corrections and a number of prison officials at Lawrence Correctional Center. (*Id.*) Castro alleges that the Illinois Department of Corrections violated the Americans with Disabilities Act and the Rehabilitation Act by not providing him access to shower services, and that various prison officials were deliberately indifferent to his medical needs surrounding a November 2012 fall in the prison shower. (*See id.* at 5-6.) Castro seeks money damages, as well as various types of injunctive relief. (*See id.* at 7.)

This matter is now before the Court for a preliminary review of Castro's amended complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a

"complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

While Castro's complaint is a bit confusing, as best the Court can tell, Castro fell in the prison shower at Lawrence on November 2, 2012, injuring his left hip, neck, head, and back. (Doc. 17 at 5.) Castro has difficulty moving due to nerve complications from previous back surgery, and he claims that the fact that the shower is "too big and high," coupled with his mobility issues and the fact that Officer Tanner "rushed him," led to the fall. (*Id.*) After the fall, Tanner saw Castro on the floor and did not help; another prisoner assisted Castro up. (*Id.*) Castro then asked for help from Officer Stroud; Stroud told Castro that he would have to wait for everyone to go to the cafeteria and then he would have Castro taken to the clinic. (*Id.*) Later that morning, Castro was seen at the clinic by Nurse Brooks – she told Castro that he would need to fill out a slip to see the doctor, and provided no treatment for his injuries. (*Id.*)

One week after the fall, Castro saw an unspecified nurse in his housing unit about his injuries, and she scheduled him to see a doctor on November 15, 2012. (*Id.*) When Castro saw the unspecified doctor, the doctor ordered x-rays for Castro's neck, but purportedly "ignor[ed] his lower back." (*Id.* at 6.) The x-rays were taken on November 19, 2012, and Castro was told of the results one week later. (*Id.*) Castro then asked for magnetic resonance imaging or to be referred to a neurologist, but an unspecified individual denied those requests. (*Id.*) Castro continued to suffer problems related to the fall, including numbness in his hands and bleeding

from his left hip, but staff provided him with no treatment but a "lower shower chair." (*Id.*) As his problems from the fall persisted, Castro put in sick requests to see the doctor and again saw Nurse Brooks, but Brooks "mocked" him and said he was "crying like [a] baby." (*Id.*)

On February 28, 2013, an unspecified doctor saw Castro, and when Castro again asked for magnetic resonance imaging or a referral to a specialist, the doctor "deferred" his requests and allegedly ignored the wound on Castro's hip. (*Id.*) Nurse Wood saw Castro that same night, observed Castro's bleeding, and gave him "meds" and "bandaids." (*Id.*) After that, Castro put in more sick call requests with unspecified individuals, but was ignored. (*Id.*) He then says he waited "too long" to see a specialist and receive additional treatment, and his request for relief suggests that he is still waiting to receive treatment for his injuries. (*Id.* at 6-7.)

Castro says that he filed six grievance forms but they were all "ignored or denied." (*Id.* at 4.) Unsatisfied with the prison's response, Castro filed a § 1983 complaint on May 14, 2015 concerning the shower fall detailed above and an incident in the prison yard that occurred in November 2013. (Doc. 1.) On June 9, 2015, the Court entered an order advising Castro that his initial complaint violated Rule 20, as it misjoined Castro's claims concerning the fall with his claims concerning the events in the prison yard. (Doc. 15.) The Court directed Castro to file an amended complaint choosing one of these two incidents as the operative one for this case. (Id.) On June 29, 2015, Castro filed an amended complaint focusing on the 2012 fall. (Doc. 17.)

## Discussion

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break the claims in Castro' *pro se* complaint into numbered counts, as shown below. The parties and

the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** The Illinois Department of Corrections violated Castro's rights under the Americans with Disabilities Act and the Rehabilitation Act, as Castro was denied access to shower services at Menard.
>
> **COUNT 2:** Hodges, Duncan, Tanner, Stroud, Brooks, Coe, and Butalid were deliberately indifferent to Castro's fall-related injuries.

Castro begins his complaint by discussing the shower facilities where he suffered a fall, and that reference – coupled with another statement in his complaint referencing the Americans with Disabilities Act – might mean that he is trying to raise a disability claim under the Americans with Disabilities Act or the Rehabilitation Act (**Count 1**). To state a claim under either act, a plaintiff must allege that he is a qualified individual with a disability and that he was excluded from participating or denied the benefit of a service by reason of his disability. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Both acts require reasonable accommodations by prisons for disabilities, so a refusal to make a necessary accommodation to allow access to a service can be tantamount to denying access to that service. *Id.* Here, Castro has said nothing about how he was denied access to showers in November 2012, either by an outright denial of access to showers or a refusal on the part of the Illinois Department of Corrections to make necessary accommodations to allow Castro access to showers. All Castro alleges is that the shower was "big and high" – he does not indicate how the size of the shower precluded him from using it given his disability, nor does he say anything about what kind of accommodations were necessary to the shower to allow him to use it. Because Castro has not alleged how he was denied access to a service, **Count 1** must be dismissed without prejudice.

Castro next claims that officials failed to properly treat the injuries related to his fall (**Count 2**). To put forth a viable medical claim under the Eighth Amendment, Castro must allege that officials were "deliberately indifferent to his serious medical needs." *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). This claim involves a two-part inquiry: the plaintiff must first show that his condition "was objectively serious," and he must then demonstrate that each named defendant acted with a sufficiently culpable state of mind concerning that condition. *Id.*

For screening purposes, Castro has alleged the existence of an objectively serious medical condition. An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Castro's fall-related injuries qualify as serious conditions, at least at screening.

To bring an Eighth Amendment claim, Castro must also allege that each of the named defendants was deliberately indifferent to his serious medical condition – in other words, that each named defendant acted with "intentional or criminally reckless disregard." *Estrada v. Reed*, 346 F. App'x 87, 91 (7th Cir. 2009). This is a defendant-by-defendant inquiry, so the Court will evaluate the allegations against each group of defendants named in Castro's case in turn.

The allegations against Officer Tanner and Officer Stroud, who first observed Castro after his fall, do not suggest anything like deliberately indifferent conduct. To be sure, deliberate indifference is a weighty state of mind requirement – allegations of "medical malpractice,

negligence, or even gross negligence" do not "equate to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). In this vein, a minor delay in referring a prisoner to treatment – especially when that delay is not alleged to have been malicious or caused any adverse consequences – does not constitute deliberate indifference. *See*, *e.g.*, *Brown v. Darnold*, 505 F. App'x 584, 587 (7th Cir. 2013) (allegation there was a delay of two hours before treatment was given by another prison official did not suggest deliberate indifference); *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010) ("We do not suggest that a minor delay in treatment constitutes deliberate indifference."); *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (two-and-a-half hour delay in treatment did not make out deliberate indifference, especially when the delay was not caused by "willful ignorance or malice"); *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995) (no viable Eighth Amendment claim because prisoner did not allege two hour delay caused him any harm, and that amount of time did "not seem like an unreasonably long wait to x-ray, examine, and possibly cast" an injury). Here, the brief delay in getting Castro to a chair occasioned by Tanner and the one-and-a-half hour delay in getting Castro to the clinic occasioned by Stroud does not suggest deliberate indifference by either officer, especially given that Castro has not alleged that he suffered any consequences due to the delays. As such, **Count 1** must be dismissed without prejudice as to Stroud and Tanner.

While Castro's claims against Stroud and Tanner must be dismissed at the gate, his allegations against Nurse Brooks plead arguable deliberate indifference on her part, at least for purposes of screening. Construing his complaint liberally, Castro says that Brooks did not provide him with any evaluation or treatment after the fall and that she refused to provide him with follow-up treatment when he asked for it. While a prisoner is not entitled to his treatment of choice, a complete failure to provide treatment – both at an initial visit and at follow-up – can

constitute deliberate indifference. *See*, *e.g.*, *Perez v. Fenoglio*, – F.3d –, 2015 WL 4092294, at *6-7 (7th Cir. July 7, 2015) (ruling that a claim against a nurse could proceed through preliminary screening where prisoner alleged that nurse failed to provide care during an initial visit); *Rice ex rel. Rice v. Correctional Med. Servs.*, 675 F.3d 650, 653 (7th Cir. 2012) ("[A] nurse may not unthinkingly defer to physicians and ignore obvious risks to an inmate's health."). Accordingly, **Count 1** may proceed through threshold review as to Nurse Brooks.

Castro's claims against the remaining defendants – at least to the extent they are sued in their individual capacities – must be dismissed. Castro names Dr. Coe, Dr. Butalid, Warden Duncan, and Warden Hodges in his caption, but he does not state anything about these defendants by name in the narrative of his complaint. It is important to remember that § 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). While Castro describes the conduct of an unspecified physician in his complaint, he says nothing about how Coe, Butalid, Duncan, or Hodges were involved in his treatment, so **Count 1** must be dismissed without prejudice as to those defendants. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). Once more, Castro does not name a John Doe designate in his caption, so any claim against the unknown physician discussed in his complaint – or against any other individuals not named in Castro's caption – should be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (for an individual to be properly considered a party under Rule 10 he must be "specif[ied] in the caption").

One closing note is in order concerning the request for "proper medical treatment" at the end of Castro's complaint.  Castro does not indicate that he seeks a preliminary injunction related to this relief, and he has not filed a motion for a temporary restraining order or a preliminary injunction with his complaint.  Accordingly, the Court does not understand Castro as asking for preliminary relief at this point.  Castro is free to file a motion for a preliminary injunction if he wishes.  In addition, given the injunctive character of some of Castro's requests for relief, Warden Duncan of Lawrence will remain in the case for the purpose of responding to any injunctive orders.  *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir.2011).

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** is **DISMISSED without prejudice**.  Because there are no further claims against it, the **ILLINOIS DEPARTMENT OF CORRECTIONS** is **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **BROOKS**. **COUNT 2** shall also **PROCEED** against **DUNCAN**, but only in his official capacity to respond to injunctive orders.  **COUNT 2** is **DISMISSED without prejudice** as to **HODGES**, **TANNER**, **STROUD**, **COE**, and **BUTALID**.  Because there are no further claims against them, **HODGES**, **TANNER**, **STROUD**, **COE**, and **BUTALID** are **DISMISSED** from this suit.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **BROOKS** and **DUNCAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take

appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant **BROOKS** is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Defendant **DUNCAN** should also enter an appearance and file an appropriate responsive pleading to the complaint to the extent the complaint requests injunctive relief.

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's motion for attorney representation (Doc. 4) is **REFERRED** to United States Magistrate Judge Stephen C. Williams for consideration.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 12, 2015**

s/ MICHAEL J. REAGAN  
**Chief Judge Michael J. Reagan**  
**United States District Judge**
