IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| XAVIER CASTRO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-556-MJR-SCW |
| | ) |
| STEPHEN DUNCAN, and | ) |
| CHRISTINE BROOKS, | ) |
| | ) |
| Defendants. | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

In May 2015, Plaintiff Xavier Castro filed a civil rights complaint against a number of prison officials at the Lawrence Correctional Center, alleging that they were indifferent to injuries he sustained from a fall in a shower at the prison. Plaintiff was directed to file an amended complaint due to pleading defects in his original complaint, and his amended complaint only stated a viable claim against Christine Brooks, a nurse at the prison. This matter is before the Court on Brooks' motion for summary judgment for Plaintiff's failure to exhaust administrative remedies (Docs. 36 and 37). The motion for summary judgment will be granted, and this case dismissed without prejudice.

### BACKGROUND

Plaintiff's amended complaint, as narrowed by the Court's threshold order, alleges one count of deliberate indifference against Nurse Brooks. Because Plaintiff's complaint sought proper medical treatment, the Court also left Warden Duncan in the case, so he could implement any injunctive relief that Plaintiff might be awarded.

Plaintiff's complaint against Brooks alleges that while he was housed at Lawrence Correctional Center, on November 2, 2012, Plaintiff fell in the prison shower, injuring his left hip, neck, head, and back (Doc. 18, p. 2). Plaintiff alleged that he already had mobility issues due to nerve complications, and that the condition of the shower coupled with the fact that he was rushed led him to fall (*Id*.). Plaintiff was seen later that morning by Nurse Brooks, but Plaintiff alleges that other than telling him that he needed to fill out a slip to see the doctor, Brooks provided him with no treatment (Doc. 18, p. 2). Plaintiff did eventually see a doctor for his injuries and an x-ray was taken of Plaintiff's neck (Doc. 18 p. 2). His lower back was not x-rayed (*Id*.) X-rays were taken on November 19, 2012 and Plaintiff was told the results one week later. Even though he had an x-ray, Plaintiff continued to suffer from issues stemming from the fall, including numbness in his hands and bleeding from his left hip (*Id*. at p. 2-3). Plaintiff saw Nurse Brooks again for his complaints and she only mocked him and did nothing (*Id*. at p. 3).

After Plaintiff allegedly received no help from Brooks, he filed a number of grievances concerning his injuries. Brooks' motion for summary judgment lays out the history of those administrative grievances, which the Court will accept as uncontroverted given Plaintiff's failure to respond to Brooks' motion. *E.g., Smith v. Lamz*, **321 F.3d 680, 683 (7th Cir. 2003);** *Flynn v. Sandahl*, **58 F.3d 283, 288 (7th Cir. 1995).**

There were three grievances that dealt with Plaintiff's fall in the shower and Brooks' failure to treat him. The first was an emergency grievance filed by Plaintiff on December 24, 2012, which said that an unknown nurse refused to treat Plaintiff's injuries

after his fall (Doc. 1, p. 19-20). That grievance was received by the warden on January 4, 2013 and denied as not an emergency on the same day (*Id.*). The grievance was returned to Plaintiff on January 31, 2013 (*Id.*). Plaintiff then filed that grievance through normal channels, submitting it first to his counselor, who received the grievance on February 1, 2013 (*Id.*). The counselor denied the grievance on February 5, 2013, as Plaintiff had been treated for his injuries (*Id.*). That grievance wasn't sent to the grievance officer for some time—a note at the bottom of the grievance from Plaintiff to the grievance officer is dated February 5, 2014 (Doc. 1, p. 20), and prison records indicate that it wasn't received by the grievance office until February 6, 2014 (Doc. 37-1, p. 7). The grievance was denied and sent to the warden on June 5, 2014 and returned to Plaintiff on June 6, 2014 (Doc. 37-1, p. 7). Plaintiff then sent the grievance to the Administrative Review Board with a note indicating that it was denied by prison staff at Lawrence as untimely (Doc. 37-2, p. 11). The grievance was received by the Board on July 31, 2014 and was returned to Plaintiff as untimely (Doc. 1, p. 21; 37-2, p. 10).

Plaintiff submitted another grievance related to the fall that was dated June 9, 2013 (Doc. 1, p. 17-18). That grievance states that his injuries from the fall were ignored by the healthcare unit and that Nurse Brooks stated that he complained too much (*Id.*). It was received by Plaintiff's counselor on June 11, 2013 and denied as out of time, as Plaintiff complained about treatment that had happened eight months prior (*Id.*). This grievance was received by the grievance office on February 6, 2014, sent to the warden on June 5, 2014, and returned to Plaintiff on June 6, 2014. The grievance was returned

with the grievance dated December 24, 2012 as untimely (Doc. 1, p. 17).

Plaintiff submitted one more grievance regarding his fall that was dated July 21, 2014 (Doc. 1, p. 11-12). That grievance has no response from the counselor or the grievance officer but indicates that it was received by the Administrative Review Board on July 31, 2014 (*Id*.). It was also denied as untimely (Doc. 1, p. 21; 37-2, p. 10).

## LEGAL STANDARDS

### A. Prison Litigation Reform Act

Federal lawsuits filed by inmates are governed by the Prison Litigation Reform Act, which states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." **42 U.S.C. § 1997e(a).** The Seventh Circuit requires strict adherence to the Act's exhaustion requirement. ***Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).** To properly exhaust his remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require," *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005)**, and he must do so before filing suit, *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** If a prisoner fails to properly utilize a grievance process, the prison "can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

In *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008)**, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative

remedies" are not required to be decided by a jury but are to be determined by a judge. To dispose of exhaustion early in the case, the Seventh Circuit offered the following procedural steps to district courts dealing with prisoner complaints:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.  (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.  (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.**

Although *Pavey* included a hearing as one of the steps in determining whether the plaintiff had exhausted his remedies, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, [and] only a legal question."  ***Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).**

### B. Illinois Administrative Exhaustion Requirements

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Department of Corrections'

Grievance Procedures for Offenders to properly exhaust his claims. **20 ILL. ADMIN. CODE § 504.800** *et seq.* The grievance procedures first require inmates to speak with the counselor about their complaint. **20 ILL. ADMIN. CODE § 504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 ILL. ADMIN. CODE § 504.810(a)(b).** After the grievance form is submitted to the grievance officer, the grievance officer shall "consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer." **20 ILL. ADMIN. CODE § 504.830(d).** The Chief Administrative Officer of the prison will then "advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director of the Illinois Department of Corrections through the Administrative Review Board. **20 ILL. ADMIN. CODE § 504.850(a).** "The Administrative Review Board shall [then] submit to the Director a written report of its findings and recommendations." **20 ILL. ADMIN. CODE § 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final

determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." **20 ILL. ADMIN. CODE § 504.850(f).**

The grievance procedures also allow for an inmate to file an emergency grievance. To do that, the inmate must forward the grievance directly to the Chief Administrative Officer, who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and handle the grievance on an emergency basis. **20 ILL. ADMIN. CODE § 504.840(a).** If an inmate forwards the grievance to the administrative officer as an emergency grievance, then the officer "shall expedite processing of the grievance and respond to the offender," indicating to him which course he has decided is necessary. **20 ILL. ADMIN. CODE § 504.840(b).** Once the officer has informed the inmate of his decision, the inmate may then appeal that decision to the Board on an expedited basis. **20 ILL. ADMIN. CODE § 504.850(g).**

## ANALYSIS

As the Court already said above, because Plaintiff has not responded to Brooks' motion, the Court will deem the facts as presented to be uncontroverted. *E.g., Smith*, **321 F.3d at 683;** *Flynn*, **58 F.3d at 288.** And because there are no uncontroverted facts on exhaustion, an exhaustion hearing is unnecessary. *Doss,* **649 F. Supp. 2d at 912.** All that said, if the undisputed facts could support a finding that Castro exhausted his remedies, summary judgment would be improper. *Flynn*, **59 F.3d at 288.**

The Court finds that the undisputed facts show that Plaintiff did not properly exhaust his remedies against Defendant Brooks. Plaintiff filed three grievances related

to Brooks' treatment of Plaintiff's injuries—one on December 24, 2012, one on June 9, 2013, and one on July 21, 2014. The December 24, 2012 grievance was first filed as an emergency grievance with the warden, who deemed the grievance not an emergency and returned the grievance to Plaintiff. There is no indication in the record that Plaintiff appealed that decision to the Administrative Review Board; instead, Plaintiff submitted his grievance through the normal grievance channels by submitting it to his counselor. The counselor denied the grievance and returned it to Plaintiff on February 5, 2013. Plaintiff had sixty days after that to submit the grievance to the grievance officer. **20 ILL. ADMIN. CODE § 504.810(a).** But Plaintiff did not submit his grievance to the officer within that period, instead submitting it on February 6, 2014 (Doc. 1, p. 19). This date is supported by the fact that Plaintiff included a note, dated February 5, 2014, on the bottom of his grievance before submitting it (Doc. 1, p. 20). The grievance was denied and returned to Plaintiff on June 6, 2014. A note to the Administrative Review Board from Plaintiff indicates that the grievance was denied by the grievance officer as out of time, and the Board, on its own assessment, denied the appeal for the same reason.

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo*, **286 F.3d at 1025.** If a prisoner fails to properly utilize a grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.** However, it is within the discretion of Illinois Department of Corrections officials to excuse a prisoner's non-compliance with the

Page **8** of **10**

administrative grievance process and resolve the grievance on the merits.  *See Riccardo v. Rausch*, 375 F.3d 521, 523–24 (7th Cir. 2004); *see also* ILL. ADMIN. CODE § 504.810(a) (providing for consideration of untimely prisoner grievances "if [a prisoner] can demonstrate that a grievance was not timely filed for good cause").

In this case, Plaintiff did not file his grievance within the required timeframe, as his grievance was not filed with the grievance office until a full year after he received his grievance back from his counselor.  As such, the grievance office and the Administrative Review Board could properly refuse to hear the grievance or could excuse the delay and hear the grievance on the merits.   In this case, the grievance office and the Board chose not to hear the grievance because it was not timely filed.  As Plaintiff failed to meet the time requirements for submitting his grievance, the prison and the Board were within their authority to refuse to hear the grievance.  Thus, the Court finds that Plaintiff failed to exhaust his administrative remedies because he failed to submit his grievance within the time restraints of the Illinois code.

The Court also finds that Plaintiff's other grievances referencing his claims against Nurse Brooks were not fully exhausted.  His grievance submitted on June 9, 2013 was denied by his counselor on June 11, 2013 for being filed out of time, as Plaintiff's allegations against Brooks took place in November 2012, some eight months prior to Plaintiff filing his June grievance.  The June 9, 2013 grievance was also among the grievances submitted to the grievance officer on February 6, 2014 and denied as untimely.  Thus, the Court finds that Plaintiff failed to properly exhaust this grievance

as he did not file it in a timely manner. Plaintiff's third grievance mentioning Brooks is dated July 21, 2014. This grievance has no response from his counselor or his grievance officer but was received by the Administrative Review Board, along with his December 24, 2012 grievance, on July 31, 2014. It was also denied as untimely. Not only was his July 21, 2014 grievance untimely but there is no indication that he sought to first exhaust his remedies at the institutional level by submitting that grievance to his counselor or the grievance officer. As Plaintiff did not follow proper procedures for his July 21, 2014 grievance, the Court finds that he failed to exhaust this grievance as well.

## CONCLUSION

Because Plaintiff failed to exhaust his prison administrative remedies against Nurse Brooks, the Court **GRANTS** Brooks' motion for summary judgment (Doc. 36), and **DISMISSES** the claim against Brooks **without prejudice** for failure to exhaust. The claim against Warden Duncan must also be **DISMISSED without prejudice**, as that claim was derivative of the claim against Brooks. There being no further claims in this case, the **CLERK** is **DIRECTED** to enter judgment of dismissal.

IT IS SO ORDERED.

DATED:   June 1, 2016

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**